Moncure, P.,
delivered the opinion of the court.
By the deed of the 4th day of June, 1857, of which an official copy, marked “Exhibit A,” is filed with the bill in this case, the land, slaves and money therein mentioned (except the slaves Harriet, Fanny and Mary Susan), were conveyed by the grantor, Mary C. Horsley, to the grantees, her sons, Charles Y. Horsley and John Horsley, in trust, for the use and benefit of her daughter, Ann E. Mills, and Nicholas Mills, Jr., husband of the said Ann E., and the children of the said Ann E. Mills and Nicholas Mills, -Jr., then living or which might be thereafter born, upon the trusts recited in said deed, as follows, to-wit:
“1. During the life of the said Ann E. Mills and Nicholas Mills, Jr., and the survivor of them, the said property and money shall be held and the income thereof applied to the support of them and the survivor of them and their children born and to be born.
“2. At the death of the survivor of them the said property and its increase shall be *430 divided among the issue of the said Ann E. Mills and Nicholas Mills, Jr., per stirpes.
“3. During the life of the said Ann E. Mills any of the above granted property may be exchanged for other property by the trustees, by and with the written consent of the said Ann E- Mills, and after her death it may be so exchanged by and with the written consent of Nicholas Mills, Jr.
“4. At the death of the survivor of the said Nicholas Mills, Jr., and Ann E. Mills, all the property hereby ^granted, (except the slaves Harriett, Fanny and Mary Susan, and they, in the event of their several owners dying childless or unmarried,) shall be divided according to the laws of descents and distributions. If the said Nicholas Mills, Jr., and Ann E. Mills shall die without children of their marriage, then all the above property shall go to the next of kin of the said Ann E. Mills,” &c., &c.
The property described in the said deed as “money” consisted of bonds of the Virginia and Tennessee Railroad Company to the par amount of nine thousand dollars, secured by mortgage and guaranteed by the city of Eynchburg, on which interest at the rate of six per centum per annum was payable semi-annually, and it seems was then and continued thereafter, so long as the said stock was held under the said trust, to be paid punctually, though the market value of the said bonds did not exceed ninety cents in the dollar, if it equalled that rate.
The court is of opinion that such was the nature of the trust created, and such the strictness of the settlement made in regard to the said property by the said deed, that no disposition could be made of the principal of the trust subject, or any part thereof, without the agency and decree of a court of chancery, except in the mode expressly prescribed by the deed. In that mode only could the trustees and beneficiaries, or any of them, dispose of the said property or any part thereof.
That mode is prescribed by the third article of the declarations of trust aforesaid, to-wit: “3. During the life of the said Ann E. Mills any of the above granted property may be exchanged for other property by said trustees by and with the written consent of the said Ann E. Mills, and after her death it may be so exchanged by and with the written consent of Nicholas Mills, Jr.”
*Now, here it will be observed that power is given to the trustees, not to sell any of the above granted property, but to exchange it for other property, and not to do even that of their own accord only, however well satisfied they might be of the advantage of such exchange to anv or all of the beneficiaries. They could do it only “by and with the written consent of the said Ann E. Mills,” or after her death “by and with the written consent of Nicholas Mills, Jr.”
The grantor in the deed had a right to withhold from the trustees and beneficiaries any power of disposition whatever, of the principal of the trust subject during the continuance of the trust, and of course she had a right to give such a power of disposition subject to such conditions and restrictions as she might choose to prescribe, however capricious or unmeaning such conditions and restrictions might seem to be. Cujus est dare ejus est dispoilere.
But it was no capricious or unmeaning condition or restriction imposed on the power of disposition given to the trustees in this case, to require that any exchange made by them of any part of the principal of the trust subject should be “with the written consent of the said Ann E. Milis,” &c. She, in her own right and as. one of the heads of the family, was deeply interested in the trust, and it was reasonable to require that any act of disposition by the trustees of any part of the principal of the trust subject should be sanctioned by her written consent.
While an “exchange” may seem strictly to imply that one subject of investment should be directly given for another, yet a more liberal and reasonable construction would no doubt authorize an exchange to be made indirectly by selling one subject, and with the proceeds of sale buying another in its place, if the act were done bona fide.
*The court is further of opinion, that while such a limited and restricted power of disposition was given to the trustees as aforesaid, they ought only so to have disposed of any part of the trust subject when, in their judgment and according to their discretion, such disposition would be beneficial to the parties interested in the trust; and they would not have been warranted in making such a disposition merely by the written consent of the said Ann E. Mills. That was a safeguard and precaution which the framer of the trust chose to superadd to the judgment and discretion of the trustees. She authorized such an exchange to be made only when thus determined on and sanctioned. Any other disposition of any part of the trust subject made by the trustees in any other manner, was a breach of trust by them for which they were responsible, as also were any other persons who may have knowingly participated with them in such breach of trust.
The court is further of opinion, that the transaction between the trustee and apoel-lee, John Horsley, and the appellee, Gus.tavus A. Hancock, on or about the 2nd day of May, 1859. whereby the said trustee sold to the said Hancock the said bonds of the Virginia and Tennessee railroad company, guaranteed by the city of Lynchburg, amounting to the principal sum of $9,000, in consideration of the bond of the said Hancock for the sum of $8.280, pavable on or before, the 1st day of Julv, 1863. with interest from the 1st day of July, 1859, to be paid semi-annually on the 1st of January and July in each year, secured bv deed of trust on real estate in the county of Al-' bemarle, was a breach of trust in the said *431 trustee, in which the said Hancock participated, having notice, actual or constructive, of the facts which constituted such breach oí trust, and the same having been committed at his instance and for his benefit; and that the said trustee and the said Hancock arc therefore liable to the beneficiaries *in the said trust for all damages sustained by them in consequence of the said breach of trust. It is at least doubtful whether the said transaction could be considered as an exchange of property within the meaning of the third clause of the declarations of trust aforesaid, even if every requisite of the said clause had been complied with. But such was not the case. It was an indispensable requisite of the said clause that any exchange of property thereby authorized should only be made “by and with the written consent of the said Ann E. Mills,” and there was no such consent.
That fact alone is. conclusive of the proposition that the transaction was a breach of trust. But even if it had been in literal pursuance of the third clause of the declarations of trust in that respect, it is _ at least doubtful whether the said transaction would not have been a breach of trust. The bonds of the Virginia and Tennessee railroad company, secured as they were by mortgage, and guaranteed by the city of Lynch-burg, were a permanent investment, and as safe a one as could well be made. The whole par amount of the bonds, $9,000, bore interest at the rate of six per cent, per annum, payable semi-annually. What good motive then could there have been for exchanging such an investment for a temporary one, of only four years’ duration? It was a great advantage in such a case to have a permanent investment, especially if it was, as in this case, perfectly safe, and yielding legal interest payable semi-annually. A loan for four years, though it might be perfectly safe, as was the case here, necessarily involved the necessity of making another investment in very short time, which might not be so easily made, nor so safe. It is obvious, therefore, that this transaction must have been occasioned by a desire of the trustee, or of Mr. and Mrs. Mills, to accommodate
Hancock, and not with a view of pro-moling *the interest of the beneficiaries in the trust, several of whom were infants. The only motive for such an exchange as was authorized by the trust ought to have been, to promote the interest of those beneficiaries; and it ought to have been made, if at all, in strict pursuance of the requisitions of the trust. Mrs. Mills’ consent to the transactions, if given at all, was not given in writing, and was given with reluctance, and on persuasion, to accommodate Hancock. She was not the only party interested in the trust. Her children were also interested, all of whom were then infants. And they were interested, not only as remaindermen after the death of their parents, but also in the income of the trust subject during the livei of their parents. She held a trust power for their benefit as well as her own, and in inseparable connection with her own. She ought, therefore, to have exercised it faithfully, as a conservative, and not a destructive power. If the transaction had not occurred, there would in all probability have been no loss of any part of the trust fund; whereas there has been a loss of the whole or greater part of the amount of the $9,000 invested in railroad bonds when the trust was created.
The court is further of opinion, that even if the said transaction had been done in strict pursuance of the power, and the bond of Gustavus A. Hancock for $8,280, with interest as aforesaid, had become, properly and regularly, a part of the said trust subject, in lieu and instead of the said bonds of the Virginia and Tennessee railroad company, it was a breach of trust in the said John Horsley to receive payment of the said bond of Hancock, which was a gold debt, in July, 1863, in Confederate currency at par, which was then depreciated in value, in comparison with gold, as nine to one.
The impropriety of that, as a fiduciary act, must have been *obvious; and it was done by the trustee, as appears from the record, in opposition to the advice of his counsel, William M. Cabell, Esq. To be sure, Mills and wife appear to have given their written consent to this act of the trustee. They say in their depositions that they gave it under the influence of representations of the trustee to them that he was bound to receive payment of Hancock’s bond in Confederate currency, and that his counsel, Mr. Cabell, had so advised him. The trustee in his answer denied that he made any such representations to them, and he expected to their depositions as incompetent testimony, and the court below accordingly so decided. This court, without deciding the question as to the correctness of that decision, and considering the said depositions as not in the case, is decidedly of opinion that the said trustee, in receiving payment of the said Hancock’s bond in Confederate currency at par, was guilty of a breach of trust, and that said Hancock, in making such payment, under the circumstances of this case, participated in such breach of trust, and that both of them are jointly and severally liable to indemnify the beneficiaries in the said trust against all loss and damage sustained by them by reason of such breach.
The court is further of opinion, that the said trustee, John Horsley, and the said Gustavus A. Hancock, are chargeable, in account with the beneficiaries under the said trust, with the price at which the said' Horsley sold to the said Hancock the said bonds of the Virginia and Tennessee railroad company, to-wit: $8,280, with interest thereon from the dale of the said sale, payable semi-annually, subject to all credits to which the said Horsley and Hancock are properly entitled on account of the same.
The court is further of opinion, that as between the said Horsley and Hancock, the said Hancock is primarily *liable for the value of said bonds of the Virginia and Tennessee railroad company, *432 except so much thereof, or of his bond therefor, as has been actually paid by him to the said Horsley in good money, to the extent of which actual payment the said Hancock is entitled to credit in his account, with the said Horsley, but not in the account of the said Horsley and Hancock with the said beneficiaries for the trust fund.
The court is further of opinion, that the said Horsley is liable for his breach of trust aforesaid, although he may not have actually intended thereby to injure the beneficiaries in the trust. The grantor in the deed had a right to guard, as she did, the rights and interests of the beneficiaries under the trust; and while the persons named therein as trustees had a perfect right at their option to accept or refuse the burthen of the trust, and one of them did refuse, while the other accepted it, yet it was the duty of the one who accepted it to become well informed and advised, as he easily might, in regard to his duties as trustee, and to execute the same according to the rights of the beneficiaries; and he must be regarded as having been so informed and advised, when we come to consider whether hg was guilty of a breach of trust or not.
The court is further of opinion, that whether the appellants are entitled to the benefit of the deed of trust to William A. Turner in the proceedings mentioned, and if so, to what extent and against what persons, to enforce the balance which .may be found against said Horsley and Hancock, or either of them, on account of the trust subject, are questions which cannot be determined until such persons are made parties to the suit, and have an opportunity of making their defence; and the appellants should be permitted, if they desire, when the cause gets back to *the court below, to make such persons defendants to the suit.
The court is further of opinion, that in the settlement of the trust account, the trustee, Horsley, ought to be credited with the scaled value of the Confederate money paid by him to Camm Patteson, substituted as trustee in his place, as at the time of ■such payments, with which scaled value with interest from that time, the said Pat-teson will be chargeable as such trustee to the beneficiaries in the trust.
The court is therefore of opinion that so much of the decrees appealed from as is in ■conflict with the foregoing opinion, is erroneous, and ought to be reversed and annulled, and the residue affirmed, and the cause remanded to the court below for further proceedings to be had therein to a final decree in conformity with the said ■opinion.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that such was the nature of the trust created, and such the strictness of the settlement made by the deed of the 4th day of June, 1857, of which an official copy, marked “Exhibit A,” is filed with the bill in this •case, in regard to the land, slaves and money therein mentioned (except the slaves Harriet, Fanny and Mary Susan), that. no disposition could be made of the principal of the trust subject, or any part thereof, without the agency and decree of a court of chancery, except in the mode expressly prescribed by the said deed. That mode is prescribed by the third article of the declarations of trust contained in said deed, and is as follows, to-wit: “3. During the life of the said Ann E. Mills any of the above granted property may be exchanged for other property *by said trustees by and with the written consent of the said Ann E. Mills, and after her death it may be so exchanged by and with the written consent of Nicholas Mills, Jr.”
. The court is further of opinion, that the transaction in the proceedings mentioned between the trustee and appellee, John Horsley, and the appellee, Gustavus- A. Hancock, on or about the 2nd day of May, 1859, whereby the said trustee sold to the said Hancock the bonds of the Virginia and Tennessee railroad company, guaranteed by the city of Lynchburg, amounting to' the principal sum of $9,000, in consideration of the bond of the said Hancock for the sum of $8,280, payable on or before the 1st day of July, 1863, with interest from the 1st day of July, 1859, to be paid semi-annually on the 1st of January and July in each year, secured by deed of trust on real estate in the county of Albemarle, was a breach of trust in the said trustee, in which the said Hancock participated, having notice, actual or constructive, of the facts which constituted such breach of trust, and the same having been committed at his instance and for his benefit; and that the said trustee and the said Hancock are therefore liable to the beneficiaries in the trust for all damages sustained by them in consequence of the said breach of trust. It was an indispensable requisite of the said third article of the said declaration of trust, that any exchange of property thereby authorized should only be made “by and with the written consent of the said Ann E. Mills,” and there was no such consent to the said transaction. Such consent could only have been given before or at the time the transaction occurred, and would have been invalid if given afterwards. But no such consent was given before, at the time, or afterwards.
The court is further of opinion, that even if the said transaction had been done in strict pursuance of the *power conferred by the said deed of trust, and the bond of Gustavus A. Hancock for $8,280, with interest as aforesaid, had become properly and regularly a part of the said trust subject in lieu and instead of the said bonds of the Virginia and Tennessee railroad company, it was a breach of trust in the said John Horsley to receive payment of the said bond of Hancock, which was due and payable in specie, in July, 1863, in Confederate currency at par, which currency was then depreciated in value, in comparison with gold, as nine to one. To be sure Mills and wife appear to have given their written *433 consent to this latter act of the trustee. They say in their deposition that they gave it under the influence of representations of the trustee to them, that he was bound to receive payment of Hancock’s bond in Confederate currency, and that his counsel had so advised him. The trustee, in his answer, denied that he made any such representations to them, and he excepted to their depositions as incompetent testimony, and the court below accordingly so decided. This court, without deciding the question as to the. correctness of that decision, and conceding its correctness for the purposes of this case, is yet of opinion that the said trustee, in receiving payment of the said Hancock’s bond in Confederate currency at par, was guilty of a breach of trust, and that said Hancock, in making such payment under the circumstances of the case, participated in such breach of trust, and that both of them are jointly and severally liable to indemnify the beneficiaries in the said trust against all loss and damage sustained by them by reason of such breach.
The court is further of opinion, that the said trustee, John Horsley, and the said Gustavus A. Hancock are chargeable in account with the beneficiaries under the said trust with the price at which the said Horsley sold to the said Hancock the said bonds of the Virginia and *Tennessee railroad company, to-wit: $8,-280, with interest thereon from the date of the said sale, payable semi-annually, subject to all credits to which they, the said Horsley and Hancock, are properly entitled on account of the same.
The court is further of opinion, that in the settlement of the trust account, the trustee, Horsley, ought to be credited with the scaled value of the Confederate money paid by him to Camm Palteson, substituted as trustee in his place, as at the time of such payment; with which scaled value, with interest from that time, the said Pat-teson will be chargeable as such trustee to the beneficiaries in the trust.
The court is further of opinion, that whether the appellants are entitled to the benefit of the deed of trust to William A. Turner in the proceedings mentioned, and if so, to what extent and against what persons, to enforce payment of the balance which may be found against said Horsley and Hancock, or either of them on account of the trust subject, are questions which cannot be determined until such persons are made parlies to the suit, and have an opportunity of making their defence; and the appellants should be permitted, if they desire, when the cause gets back to the court below, to make such persons defendants to the suit.
The court is further of opinion, that as between the said Horsley and Hancock, the said Hancock is primarily liable for the. value of said bonds of the Virginia and Tennessee railroad company, except so much thereof, or of his bond therefor, as has been actually paid by him to the said Horsley in good money, to the extent of which actual payment the said Hancock is entitled to credit in his account with the said Horsley, but not in the account of the said Horsley and Hancock with the beneficiaries of the trust fund.
*The court is therefore of opinion that so much of the decrees appealed from as is in conflict with the foregoing opinion is erroneous, and it is decreed and ordered that the same be reversed and annulled, and the residue thereof affirmed, and that the appellees, Horsley and Hancock, pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here.
And it is further decreed and ordered, that this cause be remanded to the said circuit court for further proceedings to be had therein to a final decree in conformity with the foregoing opinion; which is ordered to be certified to the said circuit court of Buckingham county.
Decree reversed.